JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, David Dissell ("Dissell"), appeals from his conviction and sentence in the Cuyahoga County Court of Common Pleas of one count of disseminating matter harmful to juveniles in violation of R.C. 2907.31 and two counts of gross sexual imposition in violation of R.C. 2907.05. For the reasons stated below, we affirm.
 {¶ 2} In March 2004, Dissell was indicted on three counts of gross sexual imposition, two counts of kidnapping, and one count of disseminating obscene matter to juveniles, all with specifications. Prior to jury selection, the state moved to amend the charge of disseminating obscene matter to juveniles to include the missing words "or harmful to juveniles." The court allowed the amendment and also allowed the title of the offense to be retitled "disseminating matter harmful to juveniles."
 {¶ 3} At trial, the victim, a ten-year-old, testified that she lived next door to Dissell. On one occasion, Dissell invited the victim over to his house to help him hang curtains. When the victim went to Dissell's home, he asked her to go up to the bedroom to get a hammer.
 {¶ 4} When the victim went to the bedroom, she noticed that a videotape was on and described the tape as a girl and a boy with no clothes on and having "s-e-x." The victim was also able to describe what the girl in the video looked like, and was able to go into further detail as to what the girl and boy in the video were doing.
 {¶ 5} The victim testified that she then went to help Dissell hang the curtains, but did not discuss the video. After finishing, Dissell asked the victim if she wanted to go up to his room to watch television. When they got to his room, Dissell apologized and said he "didn't know that was on there," referencing the video, and turned it off.
 {¶ 6} Dissell sat on the bed and asked the victim to sit next to him. The victim went over to the bed, believing Dissell only intended to show her pictures. She testified that Dissell put his hand on her thigh, called her sexy, rubbed her back underneath her skirt, told her she was not wearing a bra, and told her he was not going to touch her breasts unless she let him. When the victim told Dissell she should be getting home, Dissell touched the victim behind her knee, causing her to fall back on the bed. She testified that Dissell had his arm around her in a hugging manner and she could not get up at first. When she was able to get up and leave, Dissell went to the door with her and hugged her before she left. The victim testified that when she got home she did not tell anyone what happened because she was scared. A couple of days later, Dissell went to the victim's home and asked her aunt if the victim could help him vacuum. The victim did not go because she had homework.
 {¶ 7} A few days later, Dissell went to the victim's home again and asked her for a Band-Aid. The victim could not find one, and Dissell went home. Later that night, Dissell returned to the victim's home and gave her a CD. The victim had found a Band-Aid and invited Dissell to sit down. The victim and Dissell began watching a movie. At some point, the victim's sister came home and sat at a computer, wearing headphones and listening to loud music.
 {¶ 8} The victim testified Dissell started touching her between the legs. The victim got up and moved to another chair because she did not want Dissell touching her. Dissell kept motioning the victim to sit by him. She eventually went over to him and sat with a cat in her lap and a blanket. The victim stated that Dissell pushed the cat aside and began touching her thigh and rubbing her vagina, outside her clothes. When the victim pushed his hand away, Dissell took her hand and put it on his penis over his clothes. The victim got up and pulled away from Dissell. The victim did not say anything about what happened until a couple of nights later when the victim's aunt confronted her.
 {¶ 9} The defense pointed out a few inconsistencies with the victim's statement and her testimony. Testimony was presented that the victim, who was ten years old, lies sometimes. The victim's sister testified that although she did not notice anything different in the victim's demeanor, the victim did not want to go back over to Dissell's again. The investigating detective testified that Dissell admitted to having an adult x-rated video and that it was playing when he and the victim went to his bedroom, but that he did not know it was on. Dissell denied ever touching the victim.
 {¶ 10} During the trial, Dissell made a motion for acquittal on the disseminating charge that was denied by the trial court. Dissell began to make a general motion for acquittal on all other charges, but then withdrew the motion. Dissell was found guilty on two counts of gross sexual imposition and one count of disseminating matter harmful to juveniles. He was found not guilty of the sexually violent predator specifications associated with these charges, and not guilty on the remaining charges. The trial court labeled Dissell a sexually oriented offender. The court sentenced Dissell to one year on the count of disseminating matter harmful to juveniles, and three years on each of the gross sexual imposition counts, all to run concurrently.
 {¶ 11} Dissell has appealed, raising five assignments of error for our review. His first assignment of error provides:
 {¶ 12} "The trial court erred in permitting the state to amend the indictment under criminal rule 7(D) to reflect essential facts not in the indictment presented to the grand jury, over the objection of appellant, thereby denying appellant's right to due process guaranteed by the Ohio and United States Constitutions."
 {¶ 13} The Supreme Court of Ohio has held that "an indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." State v. O'Brien (1987),30 Ohio St.3d 122, 125-126. A reversal of the conviction is warranted only if, from considering the entire proceeding, the appellate court finds a failure of justice. See Crim.R. 7(D).
 {¶ 14} In this case, the original indictment asserted a charge for disseminating obscene matter to juveniles in violation of R.C. 2907.31. The indictment further stated that Dissell recklessly presented, to a juvenile under the age of thirteen, material or performances that are obscene with knowledge of the character or content of said material or performances. Although R.C. 2907.31 is entitled disseminating matter harmful to juveniles, we find the change of the wording of the title of the offense did not alter the name, identity or severity of the offense charged. The indictment correctly identified the statute; the statute encompasses matters obscene to juveniles; and the change in wording did not result in a different offense from the one charged. Dissell had notice of both the offense and the applicable statute.
 {¶ 15} We also find that the addition of the wording "or harmful to juveniles" did not change the name or identity of the crime or mislead or prejudice Dissell. Failure to include the element of "or harmful" in the indictment did not change the name, identity or severity of the offense charged. Also, the addition of the language "to juveniles" was mere surplusage. See State v. Huntsman (Dec. 7, 1998), Stark App. No. 98-CA-0012. Finally, we note that the jury specifically found that the matter disseminated in this case was "obscene" and that the victim was under the age of thirteen. Upon consideration of the entire proceeding, we find that no prejudice occurred and that there was no failure of justice. Dissell's first assignment of error is overruled.
 {¶ 16} Dissell's second assignment of error provides:
 {¶ 17} "Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."
 {¶ 18} In order to prevail on an ineffective-assistance claim, an appellant must demonstrate that his counsel performed deficiently and that he suffered prejudice from the deficiency. State v. Turner,105 Ohio St.3d 331, 338, 2005-Ohio-1938. "Deficient performance consists of falling below an objective standard of reasonable representation; to prove prejudice, a defendant must demonstrate that, but for counsel's errors, the result of the proceeding would have been different." Id., citing Strickland v. Washington (1984), 466 U.S. 668, 687; State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 19} Dissell claims he was denied effective assistance of counsel because his trial counsel initially made a general motion for acquittal and then withdrew the motion, which prevented the court from considering whether the state failed to establish every element of the disseminating charge. This argument has no basis on the record before us. A review of the transcript clearly reflects that Dissell's counsel made a specific motion for acquittal on the disseminating charge that the trial court denied. Dissell's counsel then made a general motion on the remaining charges that he then withdrew. Since Dissell's counsel never withdrew the specific motion on the disseminating charge and the motion was ruled upon by the trial court, we find no merit to this assignment of error.
 {¶ 20} With respect to the withdrawal of the motion on the remaining charges, although the general motion was withdrawn, the trial court indicated an intent to deny the motion. Therefore, we find that the withdrawal was harmless. Also, Dissell has failed to demonstrate that, but for the withdrawal of the general motion, the result of the proceeding would have been different. Dissell's second assignment of error is overruled.
 {¶ 21} Dissell's third assignment of error provides:
 {¶ 22} "The trial court erred in denying appellant's motion for acquittal pursuant to Crim.R. 29 when the state failed to present sufficient evidence of criminal activity."
 {¶ 23} When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 24} R.C. 2907.31 provides in relevant part: "No person, with knowledge of its character or content, shall recklessly do any of the following: (1) Sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile any material or performance that is obscene or harmful to juveniles."
 {¶ 25} Dissell claims that the state failed to present evidence that he presented the video to the juvenile. Specifically, Dissell states there was no evidence that he knew the video was on. He refers to the testimony of the victim that indicated Dissell apologized to the victim when he entered the room, turned the tape off, and did not discuss the tape with the juvenile.
 {¶ 26} The statute does not require knowing dissemination; rather, it requires knowledge of the character or content of the matter. Knowledge of the character or content of the matter is shown when a person is aware that the matter probably contains material that is obscene or harmful to juveniles. See R.C. 2901.22(B). Further, because the fact finder cannot look into the mind of a defendant, a defendant's knowledge must be inferred from all the facts and circumstances of the case. State v.Tolliver (1976), 49 Ohio App.2d 258, 262.
 {¶ 27} In this case, there was evidence that a video depicting a man and woman having sex was playing in Dissell's own bedroom. Upon entering the room, Dissell apologized for the video being on. Dissell also admitted to the investigating detective that he had an adult x-rated video. Under the facts and circumstances of this case, the fact finder could infer that Dissell had knowledge of the character and content of the video.
 {¶ 28} Next, Dissell argues the state failed to prove that he furnished the tape to the victim with heedless indifference to the consequences, as required to establish the standard of recklessly. See R.C. 2901.22(C). In this case, evidence was presented that Dissell sent the victim to his room where the video was playing. Although there was evidence that Dissell did not know the video was on, a rational trier of fact could have concluded that because the video was playing, Dissell had left it on with heedless indifference to the consequences and had perversely disregarded a known risk by sending a juvenile to the room.
 {¶ 29} Dissell also claims the state failed to identify which tape the juvenile actually saw, and therefore there was no evidence to establish the matter was obscene. However, the victim clearly testified that the video depicted a man and a woman having "s-e-x." The victim also indicated that the couple on the video were naked, described what they looked like, and described what they were doing. R.C. 2907.01(F) defines something as obscene when "(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite." The evidence, viewed in a light most favorable to the state, tends to show that the video that was presented to the juvenile was obscene. This is further supported by the evidence that after entering the room and seeing that the video was on, Dissell told the victim she was sexy and touched her inappropriately.
 {¶ 30} Accordingly, upon our review and viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Dissell's third assignment of error is overruled.
 {¶ 31} Dissell's fourth assignment of error provides:
 {¶ 32} "Appellant's convictions are contrary to the manifest weight of the evidence."
 {¶ 33} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 34} In this case Dissell was convicted of one count of disseminating matter harmful to juveniles and two counts of gross sexual imposition. We have already set forth the elements of the disseminating charge. The gross sexual imposition statute, R.C. 2907.05, provides: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender to have sexual contact with the offender; * * * when any of the following applies: (4) The other person * * * is less than thirteen years of age, whether or not the offender knows the age of the person."
 {¶ 35} The victim in this case was a ten-year-old. The evidence before us includes testimony from the victim about Dissell's repeated attempts to visit with the victim or have her come to his home to help him with chores. The victim provided detailed testimony about what was playing on the video in Dissell's room, and Dissell admitted to having an adult x-rated video. The victim also described Dissell's inappropriate sexual contact with her on the bed in his room after helping him hang curtains, and again on the couch in her home while watching a movie. The victim's sister testified that the victim did not want to go back to Dissell's again.
 {¶ 36} While Dissell questions the credibility of the victim, the weight to be given evidence and the credibility of witnesses are primarily for the trier of fact. It is evident from the record that the jury chose to believe the victim's testimony was truthful. Although this court may consider the credibility of witnesses in reviewing the record, we accord due deference to the trier of fact because the jurors had the opportunity to view the witnesses' testimony and adjudge their credibility.
 {¶ 37} Upon our review of the case, including the testimony set forth above, we find there was substantial evidence upon which the jury could reasonably conclude all the elements of the convicted offenses were proven beyond a reasonable doubt. Moreover, we do not find that the jury clearly lost its way in reaching the verdict. Dissell's fourth assignment of error is overruled.
 {¶ 38} Dissell's fifth assignment of error provides:
 {¶ 39} "The trial court erred when it imposed more than the minimum sentence upon appellant in violation of R.C. 2929.14, and in violation ofBlakely v. Washington (2004), 542 U.S. 296."
 {¶ 40} Dissell argues that the maximum sentence that may be imposed upon offenders who have not served a prison term is the shortest term authorized for the offense, absent the required findings set forth in R.C. 2929.14(B), which Dissell argues must be determined by a jury. As an initial matter, the record in this case clearly reflects that Dissell had in fact served a prior prison term for manslaughter. Insofar as Dissell argues that the factual findings in support of a sentence that exceeds the statutory minimum must be made by the jury, we previously addressed this issue of nonminimum sentences in the en banc decision of State v.Atkins-Boozer, Cuyahoga App. No. 84151, 2005-Ohio-2666. InAtkins-Boozer, this court held that R.C. 2929.14(B), which governs the imposition of more than minimum sentences, does not implicate the Sixth
Amendment as construed in Blakely.[1] Dissell's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Rocco, J., concur.
[1] See my concurring and dissenting opinion in State v. Lett, Cuyahoga App. Nos. 84707 and 84729, 2005-Ohio-2665, and Judge James J. Sweeney's dissenting opinion in State v. Atkins-Boozer, Cuyahoga App. No. 84151,2005-Ohio-2666, in which I concurred.